**Augustus E. HARVIN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 4473.

District of Columbia Court of Appeals.

Argued March 18, 1968.

Decided Sept. 5, 1968.

Frank J. O'Berg, Washington, D. C., appointed by this court, for appellant.

Lee A. Freeman, Jr., Asst. U.S. Atty., with whom David G. Bress, U.S. Atty., and Frank Q. Nebeker, Asst. U.S. Atty., were on the brief, for appellee.

Foy R. Devine, Washington, D. C., appointed by this court, argued as amicus curiae.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

We decide in this appeal that the trial judges of the District of Columbia Court of General Sessions have authority to impose

sentence under the Federal Youth Corrections Act.[1]

Appellant was charged by information with petit larceny, D.C.Code 1967, § 22-2202, and unlawful entry, D.C.Code 1967, § 22-3102. Represented by counsel, appellant withdrew his jury demand and elected a trial by the court. At the close of the Government's case a motion for judgment of acquittal on the charge of petit larceny was granted, and at the close of all of the evidence the court found appellant guilty of unlawful entry. There is no indication in the record that appellant was notified at any time prior to the finding of guilt that he might be sentenced under the Federal Youth Corrections Act.

After an initial screening by the probation office, appellant was sent to the Federal Youth Correction Center for a 60-day examination pursuant to § 5010(e) of the Act.[2] Upon his return to court appellant objected to being sentenced as a youth offender because under § 5017(c) of the Act[3] he could receive up to four years' imprisonment, with an additional two years on probation, while the maximum sentence he could be given for unlawful entry under D.C.Code 1967, § 22-3102 was six months. The court nonetheless sentenced appellant to the custody of the Attorney General for treatment and supervision under § 5010(b) of the Act[4] and made the written finding

that the "defendant [is] 19 years [of] age, and suitable for handling under Federal Youth Corrections Act. * * * " The court further made specific observations of record as to why it felt appellant would be suitable to and profit from youth offender treatment, citing the reports received from the Youth Correction Center, from the acting supervisor, and from the clinical psychologist.

This appeal questions only the jurisdiction of the District of Columbia Court of General Sessions to impose sentence under the Federal Youth Corrections Act, appellant's sole point being that the legislative history indicates the Act was intended to apply only to the United States District Court for the District of Columbia and not to the Court of General Sessions.

██ In general, several guiding principles of law are settled. First, it has been held that the Act's application in the federal district courts to any offense punishable by imprisonment includes misdemeanors, Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283 (1962); Cunningham v. United States, 256 F.2d 467 (5th Cir. 1958), and petty offenses, Brisco v. United States, 368 F.2d 214 (3d Cir. 1966). Second, there is no constitutional barrier to sentencing a youth offender to a period of incarceration longer than he lawfully could have received if he were an adult offender

1. 18 U.S.C. §§ 5005-5024 (1950); 18 U.S.C. §§ 5024-5026 (1952), as amended, 81 Stat. 741 (1967).

2. "(e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings."

3. "(c) A youth offender committed under section 5010(b) of this chapter shall be

released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction."

4. "(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; * * *."

convicted of the same offense. Johnson v. United States, 374 F.2d 966 (4th Cir. 1967); Rogers v. United States, 326 F.2d 56 (10th Cir. 1963); Carter v. United States, supra; Cunningham v. United States, supra. The reasoning, as stated in Carter, 113 U.S.App. D.C. at 125, 306 F.2d at 285, is that

> [C]ommitment under the Youth Corrections Act may be longer than one year in cases of misdemeanors, essentially because such confinement cannot be equated with incarceration in an ordinary prison. * * * Actual confinement under the Youth Corrections Act may be greater or may be less depending on many factors we cannot know or

anticipate. But the basic theory of that Act is rehabilitative and in a sense this rehabilitation may be regarded as comprising the *quid pro quo* for a longer confinement but under different conditions and terms than a defendant would undergo in an ordinary prison.[5]

Specifically, as originally written the Act excluded the District of Columbia.[6] It was amended in 1952[7] and in 1967[8] to include the District. The exclusion appears to have been because of budgetary problems, different methods of sentencing and handling of probation within the District, and the District's separate Parole Board; and the amendments designed to include the

---

5. State courts follow the same rationale when interpreting similar acts. People v. Scherbing, 93 Cal.App.2d 736, 209 P.2d 796 (1949); State v. Meyer, 228 Minn. 286, 37 N.W.2d 3 (1949); In re Herrera, 23 Cal.2d 206, 143 P.2d 345 (1943).

6. "§ 5024. Where applicable
   This chapter shall apply in the continental United States other than the District of Columbia and Alaska. Added Sept. 30, 1950, c. 1115, § 2, 64 Stat. 1085."

7. "§ 5024. Where applicable
   This chapter shall apply in the States of the United States, and to youth offenders convicted in the District of Columbia of offenses under any law of the United States not applicable exclusively to such District, and to other youth offenders convicted in the District to the extent authorized under section 5025. As amended Apr. 8, 1952, c. 163, § 2, 66 Stat. 45; June 25, 1959, Pub.L. 86–70, § 17(a), 73 Stat. 144; July 12, 1960, Pub. L. 86–624, § 13(b), 74 Stat. 413."

   "§ 5025. Applicability to District of Columbia prisoners
   The District of Columbia is authorized either to provide its own facilities and personnel or to contract with the Director for the treatment and rehabilitation of committed youth offenders convicted of offenses under any law of the United States applicable exclusively to the District. Wherever undergoing treatment such committed youth offenders shall be subject to all the provisions of this

chapter as though convicted of offenses *not applicable exclusively to the District.* Added Apr. 8, 1952, c. 163, § 3(a), 66 Stat. 46."

8. "§ 5024. Where applicable
   This chapter shall apply in the States of the United States and in the District of Columbia." 81 Stat. 741 (1967).
   "§ 5025. Applicability to the District of Columbia
   (a) The Commissioner of the District of Columbia is authorized to provide facilities and personnel for the treatment and rehabilitation of youth offenders convicted of violations of any law of the United States applicable exclusively to the District of Columbia or to contract with the Director of the Bureau of Prisons for their treatment and rehabilitation, the cost of which may be paid from the appropriation for the District of Columbia.
   (b) When facilities of the District of Columbia are utilized by the Attorney General for the treatment and rehabilitation of youth offenders convicted of violations of laws of the United States not applicable exclusively to the District of Columbia, the cost shall be paid from the 'Appropriation for Support of United States Prisoners.'
   (c) All youth offenders committed to institutions of the District of Columbia shall be under the supervision of the Commissioner of the District of Columbia, and he shall provide for their maintenance, treatment, rehabilitation, supervision, conditional release, and discharge in conformity with the objectives of this chapter." 81 Stat. 741 (1967).

District in such a way as to obviate these problems. In extending coverage to the District, however, Congress did not state that the Act was to apply only to cases brought in the District Court. In fact, the Act now reads as if to include all of the trial courts in the District of Columbia.

D.C.Code 1967, § 11–963 makes it clear that unless otherwise expressly provided the Court of General Sessions and the District Court have *concurrent* original criminal jurisdiction of

> (1) offenses committed in the District for which the punishment is by fine only or by imprisonment for one year or less; * * *.

It is true that in practice the majority of misdemeanor cases are brought in the Court of General Sessions, but this is not required by law. Significantly, these cases are brought in the name of the United States, prosecuted by the United States Attorney, and include United States Code misdemeanors as well as violations of the District of Columbia Code, both laws of the United States. And since the Act itself does not speak in terms of felonies, misdemeanors or petty offenses, but only of offenses punishable by imprisonment, there seems to us no reasonable distinction to be made between misdemeanors and petty offenses prosecuted in the District Court and those prosecuted in the Court of General Sessions.

■ Moreover, there is no bar to General Sessions having jurisdiction because the eventual term of commitment for one offense may exceed one year under the Act. As we stated in Lawrence v. United States, D.C.App., 224 A.2d 306, 308 (1966), in speaking of the second offender statute,

> The authority of the trial court to try an offense is founded not upon the penalty imposed after conviction but upon the penalty prescribed by the statute for that particular offense. * * *

> * * * We find no basis for * * * a contention, which confuses the power of the court to try an offense with the supplementary authority to impose penalties beyond its original jurisdictional limitation in cases involving repeaters.

As we have seen, a fine, but legally valid distinction is made in the application of the Act between imprisonment and incarceration for treatment and rehabilitation. And if it is modern penal philosophy that short sentences for misdemeanors and petty offenses accomplish little for the youthful criminal, or for society, and that effective treatment and rehabilitation of youth offenders require detention for extended periods of time in their most formative years, the benefits of the Act must logically apply in the trial court in this federal district which handles the bulk of youth offender cases. We therefore hold that in the absence of contrary congressional intent there is jurisdiction in the Court of General Sessions to impose sentence under the Act.[9]

Amicus curiae, whom we appointed to assist us in this case, agrees there is jurisdiction in the Court of General Sessions to sentence under the Act, but raises several other issues, not raised by appellant in the trial court or on appeal, which relate to the application of the Act to the facts of this case. We consider these issues briefly since, to our knowledge, appellant is the first person to find himself in this unexpected and unwelcome circumstance.

■ Amicus argues that while the court found appellant to be a youth offender, it failed to make the necessary finding that the offense was punishable by imprisonment under other applicable provisions of

---

9. Other federal acts, e. g., the Indigent Prisoners Act, 18 U.S.C.A. § 3569 (1948), and the Criminal Justice Act, 18 U.S.C.A. § 3006A (1964) are applied to the Court of General Sessions.

law before imposing sentence. Assuming that 18 U.S.C. § 5010(b) is to be read as requiring a finding by the trial court (1) that the person convicted is a youth offender and, in addition, (2) that the offense is punishable by imprisonment under applicable provisions of law other than this subsection, as was held in Rogers v. United States, supra, we think the record here clearly shows such finding was made.

■ Amicus suggests that appellant's Fifth Amendment right to be prosecuted by indictment for a capital or otherwise infamous crime [10] was denied because he was subject to imprisonment for more than one year when sentenced under the Act. Such was the holding in United States v. Reef, 268 F.Supp. 1015 (D.Colo.1967), based upon the court's view that youth offender treatment is still imprisonment no matter what euphemistic name it is given. However, we think that by far the majority of cases, including *Carter* in this circuit, make what is considered a valid distinction between youth offender treatment and imprisonment, and we therefore hold that an indictment was not constitutionally required.

■ Amicus' last and most serious contention is that failure to give appellant advance warning that he was subject to sentencing under the Act invalidated his waiver of jury trial, citing as controlling Dobkin v. District of Columbia, D.C.App., 194 A.2d 657 (1963), and Lawrence v. United States, supra. Those cases required advance notice of an intention to prosecute as a second offender under D.C.Code 1967, § 22–104, which created the possibility of a longer sentence, in order that the right to a jury trial might not be denied or unknowingly waived. In *Dobkin,* this court explained that advance notice of intention to prosecute as a second offender is required because the term of possible added imprisonment created a right to a jury trial which had not existed before. In *Lawrence,* this court implied that notice of intention to prosecute as a second offender is required before a demand for jury trial is withdrawn. In each instance we spoke in terms of the possibility of additional *punishment.*

The Government seeks to distinguish *Dobkin* and *Lawrence* on the ground that it is the prosecutor alone who has discretion to prosecute as a second offender, while it is the trial judge alone who has discretion to sentence under the Federal Youth Corrections Act. Additionally the Government argues that since the function of a jury is solely to determine guilt, the sentencing is irrelevant to the conviction itself.

We do not think that it would usurp the function of the trial judge in any way to inform a defendant of proper age, before or at the time of waiver, that he might be subject to youth offender treatment and to explain the potential consequences to him.[11] Merely making a defendant aware of the possibility of youth offender treatment in no way binds the court to sentence under the Act, and, in fairness, it is perhaps the better procedure to inform a defendant of such possibility so there could be no doubt that he knowingly and intelligently waived his right to trial by jury. We base our finding that there was no denial of appellant's right to a jury trial, however, upon the accepted view that youth offender treatment is not to be equated with punishment. In *Lawrence* there was a possibility

---

10. Amicus recognizes that unlawful entry may be characterized as a petty offense but argues that it takes on the essence of an infamous crime when a defendant is subject to sentence under the Federal Youth Corrections Act.

11. A defendant may challenge a guilty plea if not so informed. Carter v. United States, 113 U.S.App.D.C. 123, 306 F.2d 283 (1962).

of additional *imprisonment* of which defendant was not aware when he waived trial by jury. This is not the case here as appellant is incarcerated for treatment and rehabilitation, not for punishment. And in *Dobkin*, since the right to jury trial is phrased in terms of length of "imprisonment as punishment", D.C.Code 1967, § 16–705, any term served as a youth offender which goes beyond the maximum authorized under the substantive offense does not create such a right to a jury trial.

Accordingly, for the above stated reasons, the judgment is

Affirmed.